O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| REBEL SCHROEDER,<br><br>         Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>         Defendant. | Case No. EDCV 09-00734-MLG<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Rebel Schroeder seeks judicial review of the Commissioner's denial of his application for Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income benefits("SSI") pursuant to Titles II and XVI of the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is affirmed.

I.   **Facts and Procedural Background**

Plaintiff was born on May 8, 1965. He has a tenth grade education and has worked as a forklift operator, janitor, and maintenance person. (Administrative Record ("AR") at 98.)

1

Plaintiff filed an application for SSDI benefits on December 28, 2005, and an application for SSI on April 10, 2006, alleging disability as of March 13, 2005, due to a head, neck, and ankle injuries as well as dyslexia. (AR at 11, 75-77, 97.) His applications were denied initially and upon reconsideration. (AR at 23, 28.) An administrative hearing was started on December 18, 2007 before Administrative Law Judge ("ALJ") John W. Belcher, but was continued to May 1, 2008 before ALJ Mason D. Harrell. (AR at 253-99.) Plaintiff was represented by counsel and testified on his own behalf at both hearings. (AR at 256-61, 267-79.) A medical expert, Dr. Samuel Landau, testified at the first hearing, and a vocational expert, David Rinehart, testified at the second hearing. (AR at 261-66, 296-99.)

ALJ Harrell issued an unfavorable decision on June 17, 2008. (AR at 8-18.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 13, 2005, and met the insured status requirements of the Social Security Act through December 31, 2008. (AR at 13.) Plaintiff's severe impairments were found to include chronic neck sprain/strain, dyslexia, depression, and personality disorder. However, these severe impairments, alone or in combination, did not meet the requirements of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 13-14.) The ALJ concluded that Plaintiff could not return to his past relevant work, but that he retained the residual functional capacity ("RFC") to

> "read and write short English words; lift/carry 10 pounds frequently; lift/carry up to 20 pounds on a very infrequent basis; sit without restriction; stand/walk for

2

> 4 hours out of an 8 hour workday, with a break every 2 hours; never climb ladders or balance or work at heights; can climb stairs; occasionally work overhead; occasionally perform neck motion but avoid extremes of motion; head should be held in a comfortable position most of the time; occasionally hold head in a fixed position for 15 minutes at a time; and perform simple, repetitive tasks."

(AR at 14-16.) Finally, the ALJ determined that Plaintiff was not disabled because there were a significant number of jobs in the national and local economy that Plaintiff could perform based on the testimony of the vocational expert and use of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201 ("the grids"), as a framework for decision. (AR at 16-17.)

The Appeals Council denied review on March 26, 2009, (AR at 5-7), and Plaintiff commenced this action on April 13, 2009. Plaintiff contends the ALJ erred by: (1) failing to properly consider a treating physician's opinion regarding Plaintiff's ability to work; (2) failing to properly consider Plaintiff's GAF score as noted in a psychiatric evaluation; (3) failing to consider a treating physician's opinion regarding the side effects of Plaintiff's medication; and (4) failing to propound a complete hypothetical to the vocational expert. (Joint Stip. at 2-3.)

## II. Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on

3

legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

**III. Discussion**

    **A.   The ALJ Properly Considered the Treating Physician's Opinion**

In the decision denying benefits, the ALJ found that the medical opinion evidence in the record was "fully credible." (AR at 16.) Nonetheless, Plaintiff argues that the ALJ failed to properly consider the opinion of Dr. David Siambanes, a treating physician, that Plaintiff could not work. (Joint Stip. at 4.) In particular, Plaintiff points to two medical reports prepared by Dr. Siambanes, on August 16, 2006, and September 13, 2007, for the San Bernardino County Transitional Assistance Department. (AR at 243, 246.) The

4

opinion in each report consists of a single box checked by Dr. Siambanes that states Plaintiff can perform "no work." (*Id.*) In conjunction with checking the box on each form, Dr. Siambanes noted that Plaintiff's limitations include "no heavy lifting, no repetitive upward/downward gazing or rotation of the cervical spine." (*Id.*) In determining Plaintiff's RFC, the ALJ specifically noted and credited these specific physical limitations. (AR at 15.) However, the ALJ did not explicitly discuss the checked boxes. Plaintiff argues this was reversible error.

A treating physician's medically supported opinion regarding the nature and severity of a disability claimant's impairments is generally given great weight. 20 C.F.R. § 404.1527(d)(2); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, the ultimate determination of disability (i.e. whether a claimant can perform work in the national economy) rests solely with the Commissioner, and a physician's statement that a claimant is "unable to work" is not entitled to special weight. 20 C.F.R. 404.1527(e); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001) (ALJ not bound by opinion of treating physician with respect to ultimate determination of disability); *Martinez v. Astrue*, 261 Fed.Appx 33, 35 (9th Cir. 2007) ("[T]he opinion that [the claimant] is unable to work is not a medical opinion...[and] is therefore not accorded the weight of a medical opinion."). Moreover, an ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan* 242 F.3d at 1149.

Here, Plaintiff's argument that the ALJ failed to properly consider Dr. Siambanes's notation indicating Plaintiff can perform "no work" is unpersuasive. The box checked by Dr. Siambanes on two occasions is precisely the type of conclusory statement afforded no special weight by the Ninth Circuit in accordance with the Social Security regulations. Further, Plaintiff's argument is even less persuasive when considered in the context of the entire form completed by Dr. Siambanes. Within the same question on the medical form referred to by Plaintiff, Dr. Siambanes also listed Plaintiff's specific, medically supported limitations: "no heavy lifting, no repetitive upward/downward gazing or rotation of the cervical spine." (AR at 243, 246.) In contrast to Plaintiff's argument, a close examination of the form suggests that Dr. Siambanes believed Plaintiff could not perform work involving the listed physical limitations. As described above, the ALJ properly credited and included Plaintiff's lifting, gazing, and rotation limitations during the RFC assessment. (AR at 15.)

Finally, the ALJ is charged with summarizing the relevant medical evidence and is not required "to discuss every piece of evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Black v. Apfel*, 143 F.3d 383 (8th Cir. 1998)). The ALJ's discussion of Plaintiff's specific physical limitations in the *exact terms* used by Dr. Siambanes suggests he was aware of and rejected only the non-medical portion of the opinion, as he was entitled to do. *See e.g., Martinez*, 261 Fed.Appx at 35. For these reasons, the ALJ afforded proper weight to Dr. Siambanes's medical opinion, and Plaintiff is not entitled to relief on this claim.

//

**B.  The ALJ Properly Considered Dr. Hudson's Psychiatric Evaluation**

Plaintiff contends that the ALJ failed to properly consider the results of a psychiatric evaluation performed by Dr. Marcia Hudson on March 26, 2008. Plaintiff points to a single sentence in the ALJ's decision to argue that the ALJ: "misrepresents the record by stating, 'Dr. Hudson assessed the claimant's GAF [Global Assessment of Functioning] at 50 indicating moderate limitations.'" (Joint Stip. at 7; AR at 16.) Plaintiff argues that this is a legally erroneous misrepresentation because a GAF score from 41-50 represents "serious symptoms" rather than "moderate limitations."

The GAF Scale provides a measure for an individual's overall level of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). The Scale "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *Id*. A GAF range of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 32.

Despite its usefulness as a tool for psychological assessment, a GAF score is not determinative of mental disability or limitation for social security purposes. 65 Fed.Reg. 50746, 50764-50765 (Aug. 21, 2000) ("The GAF score does not have a direct correlation to the severity requirements in our mental disorders listings.") In evaluating the severity of a claimant's mental impairments, a GAF score may help guide an ALJ's determination, but an ALJ is not bound

7

to consider it. *McFarland v. Astrue*, 288 Fed.Appx 357, 359 (9th Cir. 2008) (ALJ did not commit error by failing to mention the plaintiff's three GAF scores of 50); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. The ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *Orellana v. Astrue*, 2008 WL 398834, at *9 (E.D. Cal. Feb. 12, 2008)("While a GAF score may help the ALJ assess Claimant's ability to work, it is not essential and the ALJ's failure to rely on the GAF does not constitute an improper application of the law."). Thus, the ALJ was not even required to discuss Plaintiff's GAF score, and a single, arguably semantic misstep by the ALJ in describing Plaintiff's GAF score does not render the decision erroneous. *See Mann v. Astrue*, 2009 WL 2246350, at *1-2 (C.D. Cal. July 24, 2009) (affirming denial of benefits despite ALJ incorrectly reporting that claimant had GAF score of 55, when GAF was actually 50).

The ALJ's overall description of Dr. Hudson's report was accurate and reflective of Dr. Hudson's evaluation. The report indicates that most of Plaintiff's mental status tests (e.g. appearance/hygiene; speech; though process) were within normal limits. (AR at 247-48.) After reviewing the report, the ALJ credited fully Dr. Hudson's clinical diagnoses that Plaintiff suffers from depression, personality disorder and a reading disorder. (AR at 13-16.) The ALJ properly weighed Dr. Hudson's report, and Plaintiff is not entitled to relief on this claim.

//

**C.   The ALJ Properly Considered the Treating Doctor's Opinion Regarding Medication Side Effects**

Plaintiff contends that the ALJ failed to properly consider Dr. Siambanes's progress report notation that Plaintiff's medication "makes him groggy and sleepy[,] but he has been taking it for some time and maintains his baseline level." (Joint Stip. at 9; AR at 238.)

"The ALJ must consider *all factors* that might have a 'significant impact on an individual's ability to work.'" *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993) (emphasis in original) (quoting *Varney v. Secretary of Health & Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1987)), *relief modified*, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." *Erickson*, 9 F.3d at 818; *Varney*, 846 F.3d at 585 ("[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized.") (citation omitted). However, Plaintiff bears the burden of producing medical evidence to show that any claimed side effects from medication are severe enough to interfere with his ability to work. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) (finding that "passing mentions of the side effects of ... medication in some of the medical records" was insufficient to demonstrate interference with ability to work).

In support of his claim, Plaintiff relies on *WebMD* for a myriad of possible side effects caused by Plaintiff's medications, namely Zantac, Feldene, Soma, Vicodin, and Lexapro. (Joint Stip. at 10.) The Court notes that the Social Security regulations do not require an ALJ to consider a claimant's medications as part of every

9

disability determination. The mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any one of the myriad possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons.

Plaintiff has failed to demonstrate that side effects from his medications precluded him from engaging in substantial gainful activity. Although the dosage and refill status of Plaintiff's medications is discussed in nearly all of Dr. Siambanes's numerous reports over a period of several years, Dr. Siambanes mentioned the alleged *side effects* of the medication only once. (*See* AR at 198-246.) Indeed, the single reference by Dr. Siambanes appears to be the *only* mention of medication side effects in the entire medical record.[1] This is precisely the type of "passing mention" of side effects that was found to be inconsequential in *Osenbrock*, 240 F.3d at 1164. Further, although Dr. Siambanes on numerous occasions described physical limitations that would affect Plaintiff's ability to work, Dr. Siambanes never included medication side effects as an employment limitation. If the side effects of Plaintiff's medication would limit Plaintiff's ability to work, Dr. Siambanes would have made more than a "passing reference" to it in a single medical report. (*Id*.) Relief is not warranted on this claim.

---

[1] During his hearing, Plaintiff testified that his medication makes him drowsy. However, the ALJ specifically found Plaintiff's testimony not credible, a finding that is not challenged by Plaintiff in this proceeding.

10

**D.   The ALJ Posed a Complete Hypothetical Question to the Vocational Expert**

Plaintiff's final contention is that the ALJ failed to pose a complete hypothetical question to the VE. (Joint Stip. at 13-14.) In particular, Plaintiff claims the ALJ should have included in the hypothetical Plaintiff's GAF score, medication side effects, and the specific limitations of "no repetitive upward/downward gazing or rotation of the cervical spine." (Joint Stip. at 14.) Plaintiff's argument is unpersuasive. A hypothetical posed to a vocational expert must contain all the limitations of a particular claimant. 20 C.F.R. § 404.1545; *Bray v. Comm'r of Soc. Serv.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)(citations omitted). If the hypothetical fails to reflect all of the claimant's limitations, the vocational expert's testimony cannot support a finding that the claimant could perform jobs in the national economy. *See id.* However, the ALJ need only include in the hypothetical those limitations that are supported by substantial evidence in the record. *Osenbrock,* 240 F.3d at 1164-65.

Here, the ALJ's hypothetical was complete. As described above, the ALJ was not required to include Plaintiff's GAF score in the hypothetical because a GAF score does not directly correlate to the severity of a disability claimant's limitations. 65 Fed.Reg. 50746, 50764-50765 (Aug. 21, 2000); *Howard,* 276 F.3d at 241. A GAF score is a psychological *assessment* tool, not a description of specific, work-related limitations. *See McFarland*, 288 Fed.Appx. at 359. Thus, the ALJ did not err in failing to recite Plaintiff's GAF score to the VE. Similarly, the ALJ was not required to include medication side effects in the hypothetical. As described above, there was

11

insubstantial evidence to demonstrate that side effects of Plaintiff's medication caused work-related limitations. *See Osenbrock*, 240 F.3d at 1164.

Finally, the ALJ adequately described Plaintiff's physical limitations (i.e. no repetitive upward/downward gazing or rotation of the cervical spine) as opined by Dr. Siambanes. Contrary to Plaintiff's argument that the hypothetical was "vague and not inclusive" as to these physical limitations, the ALJ properly translated Plaintiff's them into specific, work related limitations:

> "Mr. Rinehart, let's suppose someone who has a 10th grade education but they have dyslexia, so they can only read and write short English words...could only lift up to 10 pounds frequently, and...no more than 20 pounds infrequently. And would be able to sit, unlimited; but standing and walking would only be no more than four hours out of an eight-hour period, but then not all at once; would need breaks every two hours; could climb stairs, but not ladders; *no work at heights; no balancing; and only occasional overhead work. He can do occasional neck motion, but should avoid extremes of motion. The head should be held in a comfortable position most of the time; and he can maintain his head in a fixed position for about 15 to 30 minutes at a time, and do that occasionally*...and simple, repetitive tasks."

(AR at 296-98) (emphasis added). The emphasized portion of the hypothetical directly and specifically captures Plaintiff's inability to *repetitively* gaze upward or downward or *repetitively* rotate the cervical spine. Indeed, almost one-third of the ALJ's

1  hypothetical focuses on the limitations described by Dr. Siambanes.
2  As such, the ALJ posed a complete hypothetical to the VE, and the
3  decision is supported by substantial evidence in the record.
4  Therefore, no relief is warranted on this claim of error.

**IV.  Conclusion**

   For the reasons stated above, the decision of the Commissioner is affirmed.

Dated: November 2, 2009

_____
Marc L. Goldman
United States Magistrate Judge

13